

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 26, 2022**

_____

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| North Richland Hills Alamo, LLC, et al.[1] | § | Case No. 22-40384 (elm) |
| | § | |
| Debtors. | § | (Jointly Administered) |

---

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
### ORDER CONFIRMING SUBCHAPTER V PLAN OF REORGANIZATION FOR
### DEBTOR ICED TEA WITH LEMON, LLC

---

CAME ON FOR HEARING on July 26, 2022 (the "**Confirmation Hearing**")

confirmation of the *Subchapter V Plan of Reorganization for Debtor Iced Tea with Lemon,*

---

[1] The Debtors in these Subchapter V Cases, along with each Debtor's last four digits of its federal tax identification number and address, are: North Richland Hills Alamo, LLC (2387) 8380 Davis Boulevard, North Richland Hills, Texas 76182; and Iced Tea with Lemon, LLC (6250) 100 South Central Expressway #14, Richardson, Texas 75080. Information about the case, including any supplements, amendments or modifications to this Plan may be obtained at Information about these Subchapter V Cases can be found at any of the following: https://omniagentsolutions.com/NorthRichland, the bankruptcy clerk's office, or https://pacer.uscourts.gov.

*LLC* [Docket No. 166] filed on May 26, 2022 by Debtor and Debtor-In-Possession Iced Tea with Lemon, LLC ("**Debtor**") in the above-captioned Subchapter V bankruptcy case (the "**Subchapter V Case**" or "**Case**"),[2] as supplemented with the documents contained in the Debtor's *Notice of Filing Plan Supplement* [Docket No. 218] filed on July 12, 2022, as amended by the *Notice of Filing Amended Plan Supplement* [Docket No. 222] filed on July 21, 2022 (as so amended, the "**Plan Supplement**") (all of the foregoing referenced documents, as further amended, modified or supplemented as set forth herein, collectively the "**Plan**").

The Court having: (a) reviewed the Plan, the Plan Documents, the *Declaration of William C. DiGaetano in Support of Confirmation of the Subchapter V Plan of Reorganization for Debtor Iced Tea with Lemon, LLC* [Docket No. 224] (the "**DiGaetano Declaration**") filed by the Debtor on July 22, 2022, the *Declaration of Kim D. Steverson of Omni Agent Solutions Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Subchapter V Plan of Reorganization of Debtor Iced Tea with Lemon, LLC* [Docket No. 223] (the "**Ballot Declaration**") filed by the Debtor on July 22, 2022, (b) conducted the Confirmation Hearing, (c) heard the statements, representations, and arguments of counsel for Debtor, and other parties in interest, and considered the evidence presented or proffered at the Confirmation Hearing, (d) considered the compromises and settlements embodied in and contemplated by the Plan, the briefs and arguments regarding Confirmation of the Plan, the withdrawal and resolution of any and all objections or informal comments to the Plan, and all other evidence presented at Confirmation Hearing; and the Debtor having timely provided all holders of Claims against and Interests in the Debtor (collectively, "**Claimants**") and all parties in interest with good and sufficient notice of the Plan, Plan Documents, Confirmation Hearing, and all applicable deadlines in accordance with the provisions

---

[2] Capitalized terms used but not defined herein shall have the meanings provided in the Plan unless otherwise noted.

of title 11 of the United States Code (the "**Bankruptcy Code**"),[3] the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of this Court (the "**Local Rules**"), and the orders of this Court, as evidenced by the docket in this case, the Ballot Declaration and the Certificates of Service filed with this Court (collectively, the "**Solicitation Certificates**")[4] by the Debtor's solicitation agent Omni Agent Solutions ("**Omni**"); and there being no objections to confirmation of the Plan, and any informal comments or issues resolved as stated on the record at the Confirmation Hearing and/or by terms of this order (this "**Order**") or resolved by the applicable parties; and upon the entire record of these Cases, the record made at the Confirmation Hearing, and the arguments of counsel and all evidence adduced at the Confirmation Hearing; and the Court having determined, based upon the foregoing, and as further set forth herein, that the Plan should be confirmed; and after due deliberation and good cause appearing therefor, the Court hereby

**FINDS, DETERMINES, AND CONCLUDES AS FOLLOWS:**

A.     <u>**Findings of Fact and Conclusions of Law.**</u> The findings and conclusions set forth herein and on the record at the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated into this Order. To the extent any

---

[3] All references to statutory code provisions reference the Bankruptcy Code unless otherwise noted.

[4] "**Solicitation Certificates**," as used herein, refers collectively to (i) the *Certificate of Service* dated June 20, 2022 [Docket No. 208] evidencing the Debtor's service of the Solicitation Packages (defined below); (ii) the *Certificate of Service* dated July 13, 2022 [Docket No. 219] evidencing the Debtor's service of the Plan Supplement; and (iii) any other *Certificates of Service* Filed with the Court in connection with the Plan, Plan Documents Solicitation Packages, or solicitation process.

of the Court's findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the Court's conclusions of law constitute findings of fact, they are adopted as such.

B.  **Jurisdiction, Venue, Core Proceeding.** This Court has jurisdiction over the Case and the proceeding involving confirmation of the Plan pursuant to 28 U.S.C. § 1334 and 157 and Miscellaneous Order No. 33 of the United States District Court for Northern District of Texas. The proceedings constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O), and this Court has jurisdiction to enter a final order with respect thereto. To the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution, the Debtor consents to the entry of a final order by the Court in accordance with the terms set forth herein. The Debtor is an eligible subchapter V debtor under the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is the proponent of the Plan under section 1189 of the Bankruptcy Code.

C.  **Commencement of the Subchapter V Cases.** On February 25, 2022 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief in this Court under subchapter V of the Bankruptcy Code, thereby commencing the Case. The Debtors' Cases are jointly administered under Case No. 22-40384 pursuant to Bankruptcy Rules 1015(b) and Local Rule 1015-1. The Debtor is authorized to operate its business and manage its property as a debtor in possession pursuant to Bankruptcy Code § 1184. The Debtor commenced this Case in good faith and for appropriate purposes and has acted in good faith throughout the duration of the Case. Other than the Subchapter V Trustee, automatically appointed by statute, no other trustee or examiner has been appointed in this Case. No committee has been appointed in this Case.

D.      **Judicial Notice.** The Court takes judicial notice of the dockets of the Debtors' Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings, proofs of claim, reports, and other documents filed in these Cases, all orders entered in these Cases, all hearing transcripts in these Cases, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of these Cases.

E.      **Subchapter V Trustee.** On March 2, 2022, the Office of the United States Trustee filed the *Notice of Appointment of Subchapter V Trustee* [Docket No. 66], appointing Mark Weisbart as the Subchapter V Trustee pursuant to Bankruptcy Code section 1183(a) and 28 U.S.C. § 586(a)(3).

F.      **Burden of Proof.** Based on the record of the Debtors' Cases: (i) the Debtor has met its burden of proving each element of Bankruptcy Code § 1191 and applicable elements of § 1129 by a preponderance of the evidence; (ii) the Debtor has complied with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules with respect to the Plan and its solicitation of votes on the Plan, including, without limitation, Bankruptcy Rule 2002; and (iii) the Plan satisfies all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, including, without limitation, Bankruptcy Code §§ 1122, 1123, 1129 and 1191.

G.      **Solicitation Order.** On June 10, 2022, the Court entered its *Order (I) Scheduling a Plan Confirming Hearing; (II) Approving the Solicitation Packages and Procedures; (III) Approving the Form of Ballots, Notices, and Other Solicitation Materials; (V) and Granting Related Relief (Iced Tea Debtor)* [Docket No. 194] (the "**Solicitation Order**"), which, among other things:

> i.      granted the Debtor's *Emergency Motion for Entry of an Order (I) Scheduling a Plan Confirmation Hearing; (II) Approving the Solicitation Packages and Procedures; (III) Approving the Form of Ballots, Notices, and Other Solicitation Materials; and (IV) Granting Related Relief (Iced*

*Tea Debtor)* [Docket No. 164] (the "**Motion for Solicitation Approval**") filed on May 26, 2022;

    ii.    established **July 19, 2022 at 5:00 p.m. CT** as the deadline for parties to object to confirmation of the Plan (the "**Objection Deadline**");

    iii.    established **July 19, 2022 at 5:00 p.m. CT** as the deadline for parties to submit Ballots (defined below) accepting or rejecting the Plan (the "**Voting Deadline**");

    iv.    approved the form of the *Notice of (I) Confirmation Hearing, and (II) Deadline to Object to Debtor's Plan of Reorganization* attached to the Motion for Solicitation Approval as <u>Exhibit B</u> (the "**Hearing Notice**");

    v.    approved the form of *Non-Voting Status Notice With Respect to Unimpaired Classes Presumed to Accept the Subchapter V Plan of Reorganization for Debtor Iced Tea with Lemon, LLC* attached as <u>Exhibit C</u> to the Motion for Solicitation Approval and approved the form of *Non-Voting Status Notice With Respect to Impaired Classes Presumed to Reject the Subchapter V Plan of Reorganization for Debtor Iced Tea with Lemon, LLC* attached to the Motion for Solicitation Approval as <u>Exhibit D</u> (collectively, the "**Non-Voting Status Notices**"), including the Opt-Out Forms attached to each Non-Voting Status Notice for the purpose of enabling parties to "opt out" of the Plan's Non-Debtor Release (as defined below) provisions (the "**Opt-Out Form**");

    vi.    approved the form of the *Ballot for Voting to Accept or Reject the Subchapter V Plan of Reorganization for Debtor Iced Tea with Lemon, LLC* attached to the Motion for Solicitation Approval as <u>Exhibit E</u> (the "**Ballot**");

    vii.    established procedures for the Debtor's solicitation of votes on the Plan; and

    viii.    scheduled the Confirmation Hearing.

The Solicitation Order also approved the Solicitation and Tabulation Procedures as defined in the Motion for Solicitation Approval.

    H.    **Solicitation and Tabulation.** On or about June 20, 2022 in accordance with applicable sections of the Bankruptcy Code, Bankruptcy Rules, Local Rules, the Solicitation Order and all other applicable laws in connection therewith, the Debtor caused Omni to transmit and serve solicitation materials, including a copy of the Plan, the Hearing Notice, where appropriate the Non-Voting Status Notices, the Opt-Out Forms, and the Ballot (collectively the "**Solicitation**

**Package**") on the Holders of Claims and Interests under the Plan. Under Bankruptcy Code section 1126(f), Debtor was not obligated to solicit votes from Holders of Claims and Interests that are not Impaired and deemed to accept the Plan, and the Court finds that Classes 1, 2 and 6, are not Impaired under the Plan, and, thus, deemed to have accepted the Plan. As further evidenced by and described in the Solicitation Certificates and Ballot Declaration, the Debtor's service of the Solicitation Packages and other Plan solicitation efforts (collectively, the "**Solicitation**") was conducted in good faith and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Order, and all other applicable non-bankruptcy rules, laws, and regulations applicable to the Solicitation. Transmittal and service of the Solicitation Packages was due, proper, adequate, timely, appropriate, and sufficient under the circumstances with respect to all Claimants and parties in interest in these Cases.

I. **Voting and Results.** All procedures used to tabulate the Ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. Classes 3, 4, and 5 are Impaired under the Plan, and Classes 3, 4, and 5 were entitled to cast Ballots with respect to voting on the Plan. As described in the Ballot Declaration, Classes 3 and 5 have each voted to accept the Plan in the numbers and amounts required by Bankruptcy Code § 1126. Class 4 received no votes, and is thus deemed to have accepted the Plan pursuant to the Solicitation and Tabulation Procedures approved in the Solicitation Order. Classes 1, 2 and 6 are deemed to accept the Plan, and no Classes are deemed to reject the Plan.

J. **Compliance with Bankruptcy Rule 3016(a).** The Plan is dated and identifies the Debtor as the Plan proponent, thereby satisfying Bankruptcy Rule 3016(a). The Debtor appropriately filed the Plan with this Court, thereby satisfying Bankruptcy Rule 3016(b). The

discharge, release, injunction, and exculpation provisions of the Plan are set forth in bold and with specific and conspicuous language, thereby complying with Bankruptcy Rule 3016(c). The Court finds that each release, exculpation, and injunction provision set forth in the Plan is: (i) essential to the implementation of the Plan pursuant to Bankruptcy Code section 1123(a)(5) and warranted by the circumstances of the Case; (ii) an integral element of the Plan; (iii) the product of an arms-length transaction and a critical element of obtaining the support of the various constituencies for Plan support; (iv) fair, equitable, and in the best interests of Debtor's Estate and creditors; (v) supported by consideration, including the voluntarily subordination of the Management Company's Claims to Class 4, including the Funding Note; (vi) of critical importance to the overall objectives of the Plan, including without limitation, the final resolution of claims against or among key parties in the Case; and (vii) consistent with Bankruptcy Code sections 105, 1123, 1129, 1191, and other applicable provisions of the Bankruptcy Code.

i.    **Solicitation.** After notice and hearing on the Motion for Solicitation Approval, the Court entered the Solicitation Order approving all Solicitation Package materials. Service of the Solicitation Packages was made in compliance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All Solicitation Packages were served at least twenty-eight (28) days prior to the Objection Deadline in compliance with Bankruptcy Rule 2002(b).

ii.    **Good Faith Solicitation.** Based on the record before the Court in this Case, the Debtor and its Professionals—including each of their respective current officers, directors, employees, and managers, as of the date of this Order—and all other Persons involved in the Solicitation process have acted in "good faith" and in compliance with the Solicitation Order and

with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with the development of the Plan and in connection with all of their respective activities arising out of or relating to (i) the administration of this Case, (ii) the preparation, development, and solicitation of acceptances of the Plan, (iii) the pursuit of confirmation of the Plan, (iv) the funding of the Plan, (v) the consummation of the Plan, and (vi) the administration of the Plan and the property to be distributed under the Plan, and therefore to the same form and type of protections that would be afforded by Bankruptcy Code § 1125(e) if the Court had ordered § 1125 to be applicable to the Case. *See* 11 U.S.C. § 1181(b) (§ 1125 not applicable to a subchapter V case unless ordered otherwise).

K. **Plan Supplement.** The filing and notice of the Plan Supplement, and any modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, and no other or further notice is or shall be required.

L. **Compliance with Bankruptcy Code §§ 1122 and 1123.**

i. **Proper Classification - § 1122.** Article VI of the Plan provides for the separate classification of Claims against and Interests in the Debtor based upon differences in the legal nature and/or priority of such Claims and Interests. The Plan designates the following Classes of Claims and Interests:

- Class 1 - Priority Non-Tax Claims
- Class 2 –Secured Claims
- Class 3 – General Unsecured Claims
- Class 4 – Convenience Class Claims
- Class 5 - Intercompany Claims
- Class 6 – Equity Interests

This classification scheme complies with Bankruptcy Code § 1122(a) because the Claims or Interests in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the Classes of Claims and Interests under the Plan; such classifications were not done for any improper purpose; and such classifications do not unfairly discriminate between the holders of Claims or Interests.

 ii. **Designation of Classes of Claims and Interests - § 1123(a)(1).** The Plan complies with Bankruptcy Code § 1123(a)(1) in that Article VI designates the various Classes of Claims and Interests under the Plan, as further set forth in the preceding paragraph.

 iii. **Specify Unimpaired Classes - § 1123(a)(2).** The Plan complies with Bankruptcy Code § 1123(a)(2) in that Section Article VII of the Plan designates Classes that are Unimpaired. Unimpaired and Impaired Classes are further designated in the chart in Section 7.02 of the Plan.

 iv. **Specify Treatment of Impaired Classes - § 1123(a)(3).** The Plan complies with Bankruptcy Code § 1123(a)(3) in that Article VII of the Plan clearly explains the treatment for each Class of Claims and Interests under the Plan, including Impaired Classes.

 v. **No Discrimination - § 1123(a)(4).** The Plan complies with Bankruptcy Code § 1123(a)(4) in that all Claims or Interests, as applicable, within a particular Class are treated the same as all other Claims or Interests within such Class (without regard to any rights a Claimant may hold against third parties), unless the holder of a particular Claim or Interest has agreed to less favorable treatment of its Claim or Interest.

 vi. **Adequate Means of Implementation - § 1123(a)(5).** The Plan complies with Bankruptcy Code § 1123(a)(5) in that Article IX of the Plan provides in detail the means for

implementation of the Plan. Specifically, Article IX explains, among other things, that: (i) the Debtor will continue to operate an Alamo Drafthouse premium dine in movie theater on the Iced Tea Premises, with assumption of the Franchise Agreement and the Iced Tea Lease; (ii) the Plan will be funded from the Debtor's Disposable Income; and (iii) present management and ownership will continue operations.

vii. **Prohibition on Issuance of Non-Voting Securities - § 1123(a)(6).** The Plan complies with Bankruptcy Code § 1123(a)(6) in that the Plan does not contemplate the issuance of any Interests in the Debtor, but, for the avoidance of doubt, the membership interests in the Debtor will be preserved under the Subchapter V Plan.

viii. **Directors and Officers - § 1123(a)(7).** The Plan complies with Bankruptcy Code § 1123(a)(7) in that the Reorganized Debtor has disclosed the identity and affiliations of all persons proposed to continue to be managers, member, officers and directors of the Debtor at or prior to the Confirmation Hearing, and no change to the Pre-Petition Process is stated in the Plan. The Plan is consistent with the interests of Claimants and with public policy with the manner and selection of such officers and directors.

ix. **Payments to Creditors - § 1123(a)(8).** Bankruptcy Code § 1123(a)(8) is inapplicable in that the Debtor is not an individual, and it is not applicable under Bankruptcy Code § 1181(a).

x. **Permissive Plan Provisions - § 1123(b).** All of the Plan's provisions are consistent with Bankruptcy Code § 1123(b), including, without limitation, the following:

- Impaired and Unimpaired Claims/Interests. In accordance with Bankruptcy Code § 1123(b)(1), the Plan Impairs certain Classes of Claims and Interests and leaves other Classes Unimpaired. Classes 1, 2 and 6 are Unimpaired, and Classes 3, 4, and 5 are Impaired. The

Plan's modification of the rights of holders of Impaired Claims and Interests complies with Bankruptcy Code § 1123(b)(5).

- Debtor Release. Section 12.05 of the Plan effects a release of the Released Parties from any Claims and Causes of Action held by the Debtor, the Estate, or the Reorganized Debtor that arose prior to the Effective Date (subject to and as more fully set forth in Section 12.05 of the Plan, the "**Debtor Release**"). The Debtor Release does not release any party from Claims or Causes of Action determined by Final Order to be the result of fraud, gross negligence, or willful misconduct. The Debtor Release is critical to the successful implementation and confirmation of the Plan; the Debtor Release is supported by consideration and is fair, reasonable, and in the best interests of the Debtor and Estate; and the Debtor Release is appropriate under the circumstances of this Case. The Debtor Release constitutes a valid exercise of the Debtor's business judgment in this Case and is permissible under Bankruptcy Code § 1123(b) and applicable law.

- Non-Debtor Release. The Plan effects a release of the Debtor, the Estate, and the Released Parties from any Claims and Causes of Action held by the Releasing Parties that arose prior to the Effective Date (subject to and as more fully set forth in Section 12.06 of the Plan, the "**Non-Debtor Release**," and collectively with the Debtor Release, the "**Releases**"). The Non-Debtor Release does not release any party from Claims or Causes of Action determined by Final Order to be the result of fraud, gross negligence, or willful misconduct. The Non-Debtor Release was conspicuously noticed in the Plan, Ballots, and Non-Voting Status Notices. All holders of Claims or Interests (including holders of Administrative Claims and Priority Tax Claims) were given the chance to opt out of the Non-Debtor Release by checking the appropriate box on their Ballot or Opt-Out Form. Accordingly, the Non-Debtor Release is consensual and is an integral part of the Plan. The Non-Debtor release is supported by ample consideration in the voluntarily

subordination of the Management Company's claims, including the Funding Note, among other consideration. The Non-Debtor Release is permissible under Bankruptcy Code § 1123(b) and applicable law.

- Exculpation. The Plan provides for an exculpation limiting the liability of the Exculpated Parties for acts or omissions in connection with this Case, the commencement and administration of this Case, or the negotiation or implementation of the Plan, save and except for acts determined by Final Order to be the result of intentional fraud, criminal conduct, gross negligence, or willful misconduct (subject to and as more fully described in Section 12.04 of the Plan, the "**Exculpation**"). The Exculpation is appropriate and vital because it provides protection to those parties who served as fiduciaries during this Case or made substantial and critical contributions to the Plan. The Exculpation prevents future collateral attacks against those who have worked to maximize the Estate and, therefore, the Exculpation is appropriate and consistent with applicable law. The Exculpation is permissible under Bankruptcy Code § 1123(b) and applicable law.

- Injunction. The Plan permanently enjoins parties from pursuing or enforcing any Claims or Interests that are released or exculpated under the terms of the Plan (as more fully described in Section 12.02 of the Plan, the "**Injunction**"), which is a key component of the Plan necessary to implement the Releases and Exculpation. Without the injunction, the Plan's Release and Exculpation would lose their impact. The Injunction is permissible under Bankruptcy Code § 1123(b) and applicable law.

- Settlement. Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including, the Releases,

Exculpation, and Injunction) shall constitute a good-faith compromise and settlement of all controversies, Claims, and interests resolved pursuant to the Plan. The Plan is a valid compromise of Claims and Interests and is the product of good faith, arm's-length negotiations with the Debtor's Creditors. The Plan represents the best possible recovery to general unsecured Creditors and other parties in interest under the circumstances. As further set forth herein, the Plan represents a valid compromise that is fair and equitable and in the best interests of the Estate. The Plan's settlement and compromise of Claims and Interest is permissible under Bankruptcy Code § 1123(b) and applicable law.

- **Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).** Article VIII of the Plan provides that all Executory Contracts and Unexpired Leases not otherwise assumed or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than: (a) those that are identified on the Rejected Executory Contracts and Unexpired Leases Schedule; (b) those that have been previously rejected by a Final Order; (c) those that have been previously assumed by a Final Order; (d) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (e) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

- **Retention of Claims (11 U.S.C. § 1123(b)(3)(B)).** In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Article IX of the Plan provides that, among other things, the Reorganized Debtor shall retain and may enforce all rights to commence, prosecute, pursue, and settle any and all Causes of Action, whether arising before or after the Petition Date, including, but not limited to any actions specifically enumerated in the Plan Supplement, and such

rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. Unless any Causes of Action of the Debtor against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtor expressly reserve all Causes of Action, for later adjudication. Additionally, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to Article IX of the Plan that a Debtor may hold against any Entity shall vest in the Reorganized Debtor.

xi.  **Plans Proposed by other Parties - § 1123(c).** Bankruptcy Code § 1123(c) is not applicable because a plan cannot be proposed by another party under Bankruptcy Code § 1189(a) and the provision is inapplicable pursuant to Bankruptcy Code § 1181(a).

xii.  **Amounts Necessary to Cure Defaults - § 1123(d).** The Plan complies with Bankruptcy Code § 1123(d) in that any Executory Contracts or Unexpired Leases assumed by the Debtor under the Plan will be cured in accordance with Bankruptcy Code § 365(b), the provisions of such contract or lease, and applicable law (or as otherwise agreed to by the Debtor and the counterparty thereto).  The Debtor has duly served and noticed the Plan Supplement containing any executory contracts or unexpired leases the Debtor is rejecting, as well as any cure amounts for any executory contracts or unexpired leases the Debtor is assuming.  Article VIII of the Plan provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan. The Debtor has provided notice of such assumption (or assumption and assignment) and proposed cure amounts to the applicable third parties.  As such, the Plan provides that the Debtor will cure, or provide adequate assurance that the Debtor will promptly cure, defaults with respect to assumed Executory Contracts

and Unexpired Leases in compliance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

M. **Compliance with Bankruptcy Code § 1129.**

i. Debtor has satisfied and the Plan complies with, all applicable provisions of Bankruptcy Code section 1129(a), to the extent expressly made applicable by Bankruptcy Code section 1191(a). Even if the Plan were not confirmed as a consensual plan, the Debtor has also satisfied the requirements under Bankruptcy Code section 1191(b) because the Plan does not discriminate unfairly and is fair and equitable.

ii. **Plan's Compliance with Bankruptcy Code - § 1129(a)(1).** The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

iii. **Debtor's Compliance with Bankruptcy Code - § 1129(a)(2).** The Debtor has complied with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules in proposing and soliciting votes on the Plan, specifically Bankruptcy Code §§ 1122 and 1123. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code and under subchapter V. The Debtor has complied with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules in all respects, including in the Solicitation and tabulation of votes on the Plan.

iv. **Plan Proposed in Good Faith - § 1129(a)(3).** The Debtor has proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from *inter alia*, the facts and record of these Cases, the record

made at the Confirmation Hearing, and the other proceedings in the Cases. The Plan and the Plan Documents were proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate and to effectuate a reorganization of the Debtor. The Plan and Plan Documents were negotiated at arm's-length. Further, the Plan's classification, indemnification, Exculpation, Releases, and Injunction provisions have been negotiated in good faith and at arm's-length. Such provisions are consistent with Bankruptcy Code §§ 105, 1122, 1123(b)(6), 1129, 1191 and 1192; each provision is necessary for the success of the Plan; and none of the Plan's provisions were included for any improper purpose.

v. **Payment for Services or Costs and Expenses - § 1129(a)(4).** The Plan complies with Bankruptcy Code § 1129(a)(4) in that any payments to be made by the Debtor, Reorganized Debtor, or any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in connection with this Case, or in connection with the Plan and incident to the Case, is approved by, or subject to the approval of, as applicable, the Bankruptcy Court as reasonable.

vi. **Directors, Officers, and Insiders - § 1129(a)(5).** The Debtor has complied with Bankruptcy Code § 1129(a)(5) in that the Plan identifies that the Debtor will continue to be managed by its manager, members, and officers pursuant to its pre-petition operating agreement. The identity and structure of the Debtor's management and officers and directors is adequately set forth in the First Day Declaration. The continuation of present management is consistent with the interests of all Claimants and with public policy, including but not limited to the goals of subchapter V.

vii. **No Rate Changes - § 1129(a)(6).** Bankruptcy Code § 1129(a)(6) is not applicable to the Debtor or the Plan.

Finding of Fact, Conclusions of Law, and Order Confirming Subchapter V Plan of
Reorganization for Debtor Iced Tea with Lemon, LLC                                    17
84121267.3

viii. **Best Interest of Creditors - § 1129(a)(7).** The Plan satisfies Bankruptcy Code § 1129(a)(7) in that, as demonstrated by the liquidation analysis, each holder of an Impaired Claim that has not accepted the Plan will, on account of such Claim, receive or retain property under the Plan having a value, as of the Effective Date, that is at least equal to the amount that such holder would receive or retain if the Debtor's Estate was liquidated under Chapter 7 of the Bankruptcy Code. The liquidation analysis attached to the Plan and the other evidence related thereto in support of the Plan proffered or adduced at or prior to the Confirmation Hearing, including in the DiGaetano Declaration: (a) are reasonable, persuasive, credible and accurate as of the dates such analyses or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; and (c) have not been controverted by other evidence. Thus, the Plan satisfies the "best interest test." In any event, all Classes that voted, voted in favor of the Plan.

ix. **Acceptance by Impaired Classes - § 1129(a)(8).** Claims and Interests in Classes 1, 2 and 6 are Unimpaired and deemed to accept the Plan pursuant to Bankruptcy Code § 1126(f). Claims in Classes 3, 4 and 5 are Impaired under the Plan. Classes 3 and 5 have voted to accept the Plan in accordance with Bankruptcy Code § 1126(c). No votes were cast by holder of Claims in Class 4; thus, in accordance with the Solicitation and Tabulation Procedures approved pursuant to the Solicitation Order, Class 4 is deemed to have also accepted the Plan for purposes of Bankruptcy Code § 1126(c). The foregoing is evidenced by the Ballot Declaration. Thus, the Plan satisfies Bankruptcy Code § 1129(a)(8) in that all Impaired Classes entitled to vote on the Plan have accepted the Plan.

x. **Administrative Claims and Priority Tax Claims - § 1129(a)(9).** The Plan complies with Bankruptcy Code § 1129(a)(9) in that Article V of the Plan provides for all Allowed Administrative Claims and Allowed Priority Tax Claims to be paid in full on the Effective Date or such later date in accordance with the Plan and § 1129(a)(9)(C)-(D), except to

the extent that the Claimant agrees to less favorable treatment, and for Professional Fee Claims that are not yet Allowed as of the Effective Date to be paid in full upon allowance by the Bankruptcy Court.

      xi.    **Acceptance by Impaired Class - § 1129(a)(10).** Bankruptcy Code § 1129(a)(10) is satisfied in that, as described above and in the Ballot Declaration, Classes 3 and 5 are Impaired and voted to accept the Plan. No votes were received in Class 4, thus pursuant to Solicitation and Tabulation Procedures defined in the Solicitation Order, Class 4 is also deemed to accept the Plan.

      xii.    **Feasibility- § 1129(a)(11).** Bankruptcy Code § 1129(a)(11) is satisfied in that the Plan provides for the evidence supporting the feasibility of the Plan proffered or adduced by the Debtor at or before the Confirmation Hearing, including the DiGaetano Declaration: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, and/or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or the Reorganized Debtor, as applicable; and (e) establishes the Debtor or the Reorganized Debtor, as applicable, will have sufficient funds to meet its obligations under the Plan.

      xiii.    **U.S. Trustee Fees - § 1129(a)(12).** Pursuant to § 4(b)(3) of the Small Business Reorganization Act of 2019, 11 U.S.C. § 1129(a)(12) is not applicable to subchapter V debtors, thus the Debtor need to satisfy this requirement in the Plan.

      xiv.    **Retiree Benefits - § 1129(a)(13).** Bankruptcy Code § 1129(a)(13) is satisfied because the Plan provides for the continuation of any applicable Employee Benefit Plans, if any, pursuant to Section 9.09 of the Plan.

FINDING OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SUBCHAPTER V PLAN OF REORGANIZATION FOR DEBTOR ICED TEA WITH LEMON, LLC    **19**

84121267.3

xv. **Domestic Support Obligations - § 1129(a)(14).** Bankruptcy Code § 1129(a)(14) is not applicable because the Debtor is not an individual and does not have any domestic support obligations.

xvi. **Payments by Individual Debtors - § 1129(a)(15).** Bankruptcy Code § 1129(a)(15) is not applicable because the Debtor is not an individual and 1129(a)(15) does not apply to subchapter V debtors under 1191(a) of the Bankruptcy Code.

xvii. **Transfers of Property - § 1129(a)(16).** Bankruptcy Code § 1129(a)(16) is not applicable because the Debtor is not a non-profit corporation or trust. However, all transfers of property contemplated by the Plan are to be made in accordance with applicable nonbankruptcy law governing the transfer of property.

xviii. **No Unfair Discrimination; Fair and Equitable - §§ 1191(b) and (c).** The Debtor has satisfied the confirmation requirements of Bankruptcy Code § 1191(a). However, even if a Class had voted to reject the Plan causing § 1129(a)(8) to not be satisfied, because the Plan does not unfairly discriminate and is fair and equitable to each Impaired Class within the meaning of Bankruptcy Code section 1191(b) and (c), the Plan may be confirmed pursuant to § 1191(b).

(a) Bankruptcy Code section 1191(c)(1) is satisfied because the Plan satisfies the requirements under Bankruptcy Code section 1129(b)(2)(A) as to Allowed Secured Claims.

(b) As of the Effective Date of the Plan, the Plan provides that all of Debtor's projected Disposable Income, as defined by Bankruptcy Code section 1191(d), during the 3-year Commitment Period will be applied to make payments under the Plan.

(c) There is a reasonable likelihood that the Debtor will be able to make the payments under the Plan and the Plan contains appropriate remedies to protect Holders of Claims and Interests in the event that Plan payments are not made.

xix. **Purpose of the Plan - § 1129(d).** Bankruptcy Code § 1129(d) is satisfied in that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

xx. **Subchapter V Plan Deadline.** The Plan complies with Bankruptcy Code section 1189 because it was timely filed within the deadline of and including May 26, 2022.

xxi. **Subchapter V Plan Content.** The Plan complies with Bankruptcy Code section 1190(1) because Articles II and III provide the following mandatory content: (i) a brief history of Debtor's business operations; (ii) a liquidation analysis; and (iii) projections with respect to the Debtor's ability to make payments under the Plan.

N. **Satisfaction of Solicitation and Confirmation Requirements.** All requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules have been satisfied as necessary for confirmation of the Plan.

O. **Plan and Plan Documents.** The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the Debtor provided good, proper, and sufficient notice of the Plan, Plan Supplement, and all other Plan Documents in accordance with the Bankruptcy Code and the Bankruptcy Rules, and no further notice is necessary or required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan and are hereby approved. Subject to the terms of the Plan and Bankruptcy Code Section 1193, the Debtor reserves the right to make alterations, amendments, updates, or modifications to the Plan Supplement and any other Plan Documents before the Effective Date. The Plan Documents, including the Plan Supplement and all Plan exhibits (as may be amended or supplemented) have been negotiated in good faith and are, in the judgment of the Court and the parties, necessary and appropriate to effectuate the Plan. The Plan Documents are essential elements of the Plan, and

entry into each such Plan Document is in the best interests of the Debtor, the Estate, and holders of Claims and Interests. The Debtor has exercised reasonable business judgment in determining to enter into the Plan, and the terms and conditions of the Plan, including the fees, expenses, and other payments set forth therein, have been in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and shall, upon completion of documentation and execution, be valid, binding, non-avoidable, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtor has provided sufficient and adequate notice of the Plan, including each of the Plan Documents, to all parties in interest in the Debtor's Subchapter V Case.

P.      **Sound Business Judgment.** Consummation of the Plan, the transactions contemplated under the Plan, and execution of all Plan Documents is a sound exercise of the Debtor's business judgment. The terms and provisions of the Plan and all Plan Documents are in the best interest of the Debtor, its Estate, and Claimants.

Q.      **Assumption and Rejection.** Each assumption or rejection of an Executory Contract or Unexpired Lease as provided in Article VIII of the Plan shall be legal, valid, and binding upon the applicable Debtor and all non-Debtor counterparties to such contracts or leases, and satisfies all requirements of Bankruptcy Code § 365. The Debtor has exercised sound business judgment in determining whether to reject, assume, or assume and assign each of its Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article VIII of the Plan, and as set forth in the Plan Supplement. Except as set forth herein and/or in separate orders entered by the Court relating to assumption of Executory Contracts or Unexpired Leases, consistent with the Plan Supplement, the Debtor has cured or provided adequate assurances that the Debtor and/or the Reorganized Debtor will cure defaults (if any) under or relating to each

Executory Contract or Unexpired Lease assumed under the Plan and, for each Executory Contract or Unexpired Lease being assumed and assigned under the Plan.

R. **Exculpation, Releases, and Injunction.** The Releases, Exculpation, and Injunction provisions set forth in Article XII of the Plan constitute good faith compromises and settlements of the matters covered thereby. Each of the Release, Exculpation, and Injunction provisions set forth in Article XII of the Plan: (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) is an essential means of implementing the Plan pursuant to Bankruptcy Code § 1123(a)(5); (iii) is an integral element of the resolution of this Subchapter V Case, and implementation of the Plan, in accordance with the Plan and the failure to effect such provision would seriously impair the Debtor's ability to confirm the Plan; (iv) confers material benefits on, and is in the best interests, of the Debtor, the Debtor's Estate, and Claimants; (v) is, *inter alia*, supported by ample consideration in that Management Company would have, by far the largest claim in the unsecured class is voluntarily subordinating its pre-petition claims to general unsecured claims to unable a larger payout to unsecured creditors; (vi) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties in interest in the Subchapter V Case with respect to the Debtor; (vii) is fair, equitable, reasonable, and in the best interests of the Debtor and their Estate, Creditors, and Interest holders; and (viii) is consistent with Bankruptcy Code §§ 105, 1123, and 1191 and other applicable sections of the Bankruptcy Code and Bankruptcy Rules. The record of the Confirmation Hearing and the Subchapter V Case is sufficient to support the Releases, Exculpation, and Injunction provisions contained in Article XII of the Plan. Accordingly, this Court finds that the Exculpation, Injunction, and Releases are consistent with the Bankruptcy Code and applicable law.

S.     **Consensual Non-Debtor Releases.** The Non-Debtor Release described in Section 12.06 of the Plan is a consensual third-party release and constitutes an integral component of the Plan. The Plan provides that: (i) parties entitled to vote on the Plan may affirmatively opt out of the Non-Debtor Releases by voting to reject the Plan and checking the appropriate box on their Ballot to opt out of the Releases; and (ii) parties not entitled to vote on the Plan may affirmatively opt out of the Non-Debtor Releases by checking the appropriate box on the Opt Out Form included with their Non-Voting Status Notice.  Only two parties opted out of the Non-Debtor Release, Hartman Richardson Heights Properties, LLC and Paramount Pictures Corporation.

i.     **Parties Entitled to Vote on the Plan**. The Ballots clearly and explicitly stated that, in order to avoid being deemed a Releasing Party, parties were required to timely vote to reject the Plan and check the opt out box on their Ballot; the Ballots included the full text of the Non-Debtor Releases set forth in Section 12.06 of the Plan; and both the Plan and the Ballots conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties entitled to vote on the Plan were given due and adequate notice that voting to accept the Plan (or otherwise failing to reject the Plan and opt out of the Non-Debtor Releases) constituted consent to the Non-Debtor Release. All parties who voted to accept the Plan, and all parties whose vote was solicited but did not return a Ballot return a Ballot rejecting the Plan and opting out of the Non-Debtor Release, have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without limitation, releases of claims against non-debtors to the extent set forth in Section 12.06 of the Plan.

ii.     **Parties Not Entitled to Vote on the Plan**. The Non-Voting Status Notices clearly and explicitly stated that, in order to avoid being deemed a Releasing Party, parties were required to timely submit the Opt Out Form included with their Non-Voting Status Notice checking the box to opt out of the Non-Debtor Release; the Non-Voting Status Notices included the full text of the Non-Debtor Releases set forth in Section 12.06 of the Plan; and both the Plan and the Non-Voting Status Notices conspicuously stated that parties are deemed to provide the Non-Debtor Release unless they opted out. Thus, all parties not entitled to vote on the Plan were given due and adequate notice that failing to submit the Opt Out Form opting out of the Non-Debtor Releases constituted consent to the Non-Debtor Release. All parties not entitled to vote on the Plan that did not return an Opt Out Form opting out of the Non-Debtor Release have manifested their consent to, and are contractually bound by, the Non-Debtor Release, including, without limitation, releases of claims against non-debtors to the extent set forth in Section 12.06 of the Plan.

Furthermore, the Debtor and Released Parties compensated Claimants for the Non-Debtor Release with adequate consideration, including, without limitation by providing substantial contributions to the Subchapter V Case and the Plan.[5] Without such substantial contributions, a successful reorganization and confirmation of the Plan would not be possible. The substantial contributions by the Debtor and Released Parties have thus ultimately resulted in the Debtor being able to submit the Plan, which provides for efficient and timely Distributions to be made to Creditors. Additionally, the Non-Debtor Release: (i) constitutes a good-faith Settlement and compromise of the Claims and Causes of Action released by the Non-Debtor Release; (ii) is in the best interests of the Debtor and its Estate; (iii) is fair, equitable, and reasonable; (iv) is given and made after due notice and opportunity for hearing; (v) is narrowly tailored; (vi) consensual; and (vii) is a bar to any Claims or Causes of Action released by the Non-Debtor Release against any of the Released Parties. The consensual releases provided for in the Plan do not violate applicable law.

T. **Exculpation.** The Exculpation provisions set forth in Section 12.04 of the Plan are essential to the Plan. The record in the Subchapter V Case fully supports the Exculpation and the provisions set forth in Section 12.04 of the Plan, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation. The exculpation provisions provided in the Plan do not violate applicable law.

U. **Injunction.** The Injunction provisions set forth in Sections 12.02, 12.03 and 12.11 of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Non-Debtor Release, and the Exculpation, and the Injunction provisions are appropriately tailored to achieve those purposes. Any dispute regarding the scope

---

[5] The substantial contributions of the Released Parties include, without limitation, a voluntary subordination of the pre-petition Intercompany Claims as defined in the Plan, including the Funding Note.

or application of the Releases contained in the Plan shall be brought before the Bankruptcy Court or such court as the Bankruptcy Court may direct. The injunction provisions provided in the Plan do not violate applicable law.

V.    **Settlement of Claims and Interests.** The settlements and compromises of Claims and Interests contained in (or incorporated into) the Plan (each such settlement and compromise, a "**Settlement**," and collectively, the "**Settlements**"), are necessary to, and are an integral and essential element of, the Plan and its consummation, and the terms and conditions of such Settlements are fair and reasonable under the circumstances. The performance of the terms thereof is authorized, and the parties are directed to consummate the same. The Settlements are the product of arm's-length negotiation, and have been proposed in good faith, for legitimate business purposes, are supported by reasonably equivalent value and fair consideration and reflect the Debtor's exercise of reasonable business judgment. Entry into the Settlements and consummation of the same is in the best interests of the Debtor, its Estate, its Creditors, and Interest holders. The Debtor has provided all interested parties with sufficient and adequate notice of, and an opportunity to object and to be heard with respect to, any and all Settlements. The terms and provisions of the Settlements are approved pursuant to this Order.

W.    **Enforceability of the Plan.** Except as addressed herein or in any future order of the Bankruptcy Court contemplated by this Order, the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The Debtor, the Debtor Related Persons, and the Reorganized Debtor, and their advisors, attorneys, employees, agents, and representatives, will be acting in good faith if they proceed to (i) consummate, implement and proceed in furtherance of the Plan and the agreements, the Settlement, transactions, transfers and

documentation contemplated thereby and (ii) take any actions authorized and directed by this Order.

X. **Objections.** All parties and parties-in-interest have had a full and fair opportunity to file objections to confirmation of the Plan and to litigate any such objections. No objections were filed to the Plan. To the extent that any objections, reservations of rights, statements, or joinders to Confirmation, including any statements at the Confirmation Hearing, have not been resolved, withdrawn, waived, adjourned, or settled prior to entry of this Order or otherwise resolved herein or as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits based on the record before this Court.

Based upon the foregoing, all requirements for confirmation of the Plan -whether set forth in the Bankruptcy Code, Bankruptcy Rules, Local Rules, or otherwise-have been satisfied, and the Plan shall be confirmed. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. **CONFIRMATION OF PLAN.** The Plan is hereby **CONFIRMED** in each and every respect pursuant to Bankruptcy Code §§ 1191, and 1129, as applicable. Any modifications to the Plan are hereby approved and incorporated into and made an integral part of the Plan. Each and every provision of the Plan and Plan Documents is incorporated by reference into, and is made an integral part of, this Order as if the Plan were set forth in its entirety in this paragraph. The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent. The failure to specifically include or refer to any particular section or provision of the Plan or the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such section or provision nor constitute a

waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

2. **APPROVAL OF PLAN DOCUMENTS.** All of the Plan Documents are hereby authorized and **APPROVED**. The form, terms, and provisions of the Plan Documents shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with its terms. The terms and provisions of the Plan Documents are incorporated by reference into, and are made an integral part of, this Order as set forth entirely in this paragraph. Subject to the terms of the Plan and this Order, the Debtor reserves the right to alter, amend, update, or modify the Plan Documents subject to the time limits provided herein or in the Plan.

3. **SOLICITATION AND NOTICE.** Notice of the Confirmation Hearing and the Debtor's Solicitation of votes on the Plan complied with the terms of the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Debtor's Subchapter V Case, and were in compliance with the provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

4. **OBJECTIONS.** There were no timely objections filed to the Plan. To the extent that there are any objections (including any reservations of rights contained therein) to confirmation of the Plan or other responses or reservations of rights raised at the Confirmation Hearing with respect thereto have not been withdrawn, waived, settled or otherwise resolved prior to entry of this Order, such objections and responses shall be, and hereby are, overruled on the merits and denied for all purposes.

5. **ORDER EFFECTIVE IMMEDIATELY.** Notwithstanding the provisions of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, or otherwise, this Order and all terms and provisions hereof

shall be effective immediately upon entry. The Debtor, the Debtor Related Persons, the Reorganized Debtor, and their advisors, attorneys, employees, agents, and representatives, shall be acting in good faith if they proceed to immediately (a) consummate the Plan and the agreements, the Settlement, transactions, transfers and documentation contemplated thereby and (b) take any actions authorized and directed by this Order, including commencing Distributions.

6. **SUBSTANTIAL CONSUMMATION.** The Plan shall be deemed substantially consummated as of the Effective Date under Bankruptcy Code §§ 1101 and 1193(b). Upon the occurrence of the Effective Date, the terms of the Plan, the Plan Documents, and this Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of any Claims against or Interests in the Debtor (irrespective of whether their Claims or Interests are presumed to have accepted or deemed to have rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor or the Reorganized Debtor, and any parties in interest.

7. **DISCHARGE.** Because the Plan is confirmed under Bankruptcy Code section 1191(a), on the Effective Date of the Plan, the Debtor shall receive a discharge pursuant to Plan Section 12.12 "Consensual Plan – Discharge Under Bankruptcy Code section 1141(d)" as to any debt that arose before entry of this Confirmation Order in accordance with Bankruptcy Code section 1141(d)(1)(A).

8. **MODIFICATION AFTER CONFIRMATION.** Debtor may modify the Plan at any time within the Commitment Period, but such modified plan shall become the Plan only if

circumstances warrant and the Court, after notice and a hearing, confirms such proposed modifications under Bankruptcy Code sections 1191 and 1193.

9. **GENERAL AUTHORIZATION.** The transactions described in the Plan, the Plan Documents, and this Order, are hereby approved. On or before the Effective Date, and after the Effective Date, as necessary, and without any further order of the Court, other authority, or corporate action, the Debtor or the Reorganized Debtor, as applicable, and its respective directors, managers, officers, employees, members, agents, attorneys, financial advisors and Omni are authorized and empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable laws to and shall (a) grant, issue, execute, deliver, file, or record any agreement, document, and the documents contained in the Plan or the Plan Documents (as modified, amended, and supplemented pursuant to the provisions of the Plan governing such modifications, amendments, and supplements), or any other documents related thereto and (b) take any action necessary, advisable, or appropriate to implement, effectuate, and consummate the Plan, the Plan Documents, or this Order, including, but not limited to, and the making of all distributions under the Plan, the Plan Documents, or this Order; and (c) entering into any and all transactions, contracts, leases, instruments, releases, and other documents and arrangements permitted by applicable law, order, rule, or regulation. The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of the Debtor, or the Reorganized Debtor, as applicable, or any officer, director, agent, or manager thereof to take any and all actions necessary, advisable, or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Plan, the Plan Documents, or this Order pursuant to section 1142(b) of the Bankruptcy Code. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable

nonbankruptcy law, any of the foregoing actions that would otherwise require approval of the equity holders, directors, or managers (or any equivalent body) of the Debtor or the Reorganized Debtor, as applicable, such approval shall be deemed to have occurred and shall be in effect from and after the Effective Date without any further action by the members, directors, or managers (or any equivalent body) of the Debtor or the Reorganized Debtor. Prior to, on, or as reasonably practicable after the Effective Date, the Debtor or the Reorganized Debtor shall, if required, file any documents required to be filed in such jurisdictions so as to effectuate the provisions of the Plan, the Plan Documents. Any or all documents contemplated herein shall be accepted by each of the respective filing offices and recorded, if required, in accordance with applicable law. All counterparties to any documents described in this paragraph are hereby directed to execute such documents as may be required or provided by such documents, without any further order of the Court. Each of the Plan Documents, once executed, constitutes a legal, valid, binding, and authorized obligation of the respective parties thereto, enforceable in accordance with its terms, and the terms contained in each such executed Plan Document shall supersede any description of such terms contained in the Plan or the Plan Supplement or otherwise set forth in a term sheet or unexecuted version of such document.

10. **BINDING EFFECT.** In accordance with Bankruptcy Code § 1141 and 1192, and immediately upon entry of this Order, the provisions of the Plan (including the Plan Documents) and this Order shall be, and hereby are, binding upon any past, present, or future Claimant, including counterparties to the Debtor's Executory Contracts and Unexpired Leases, whether or not such Claimant is Impaired under the Plan, whether known or unknown, and whether or not such Claimant has accepted the Plan. The terms of the Plan, all exhibits thereto, all Plan Documents, and all other relevant and necessary documents shall be effective and binding as of

the Effective Date, and the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Subject to the terms of the Plan and this Order, all prior orders of this Court entered in these Cases, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before the Court as of the Effective Date shall be, and hereby are, binding on and shall inure to the benefit of the Reorganized Debtor. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

11. **PLAN CLASSIFICATION CONTROLLING.** The classification of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.

12. **VESTING OF ASSETS.** As of the Effective Date, pursuant to Bankruptcy Code § 1141(b) and (c), and in accordance with Section 9.05 of the Plan, all assets of the Debtor, including all assumed Executory Contract and Unexpired Leases shall vest in the Reorganized Debtor free and clear of all Claims, Liens, Causes of Action, encumbrances, charges, and other interests (except as otherwise expressly provided in the Plan or this Order) on the Effective Date. To the extent that the retention by the Debtor or the Reorganized Debtor of assets held immediately prior to emergence in accordance with the Plan is deemed, in any instance, to constitute a "transfer" of property, such transfer of property to the Debtor or the Reorganized Debtor (a) is or shall be a legal, valid, and effective transfer of property; (b) vests or shall vest the Debtor with good title to such property, free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or this Order; (c) does not and shall not constitute an avoidable transfer under the Bankruptcy Code or under applicable nonbankruptcy law; and (d) does not and shall not subject the Debtor or the Reorganized Debtor

to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including by laws affecting successor or transferee liability.

13. **RETENTION OF CAUSES OF ACTION/RESERVATION OF RIGHTS.** Subject to the terms of the Plan, and except to the extent not otherwise released by the Plan, all of the Debtor's Claims and Causes of Action against third parties, including, without limitation, Avoidance Actions (collectively, "**Actions**"), shall survive Confirmation and the commencement of prosecution of Actions shall not be barred or limited by any res judicata or estoppel, whether judicial, equitable or otherwise, based on, *inter alia*, confirmation of the Plan or the extent to which the Plan, Schedules of Assets and Liabilities, or Statements of Financial Affairs identify any Actions or Causes of Action. The Reorganized Debtor's right to commence and prosecute Actions not otherwise released by the Plan shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

14. **CASE ADMINISTRATION.** From and after the Effective Date and continuing through the date that a Final Decree closing these Case is entered under Bankruptcy Code § 350 and Bankruptcy Rule 3022, the Reorganized Debtor will possess the rights of the Debtor for all matters arising in, arising under or related to this Subchapter V Case. In addition to, and without limiting the generality of the foregoing, for all matters arising in, arising under or related to this Subchapter V Case, the Reorganized Debtor will: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (b) have the right to obtain records of, or related to, the Debtor (including, without limitation, financial records, tax returns, bank statements and cancelled checks), and the entities from which such records may be requested are hereby authorized and directed to produce such records to the Reorganized Debtor; (c) be entitled to notice and opportunity for hearing; (d) be entitled to participate in all matters brought

before the Bankruptcy Court, including, but not limited to, adversary proceedings; (e) have exclusive standing to commence Actions not otherwise released by the Plan; (f) be entitled to request the Bankruptcy Court to enter a Final Decree closing the Subchapter V Case; (g) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in this case; and (h) have all other rights, privileges, and protections set forth in the Plan.

15. **PROPERTY OF THE DEBTOR.** Upon the Effective Date, the Reorganized Debtor is granted express authority to convey, transfer, and assign any and all property of the Debtor consistent with the terms of the Plan, and to take all actions necessary to effectuate the same and amend or enter into new contracts or agreements without further Court approval, consistent with the Plan.

16. **NOTICE OF CONFIRMATION AND EFFECTIVE DATE.** Within four (4) Business Days after the Effective Date, the Reorganized Debtor shall File a notice advising of (a) the entry of this Order; (b) the occurrence of the Effective Date; (c) the last date to File Professional Fee Claims; and (d) the last date to File Rejection Claims arising from the rejection of any Executory Contracts or Unexpired Leases pursuant to Section 13.04 of the Plan (the "**Notice of Effective Date**"). The Reorganized Debtor shall serve the Notice of Effective Date via regular U.S. mail, postage prepaid, upon all parties set forth on the master mailing matrices for both of the Cases, and such service shall be sufficient to apprise all parties in interest of the applicable Claims Bar Dates and all other information contained in the Notice of Effective Date.

17. **ADMINISTRATIVE CLAIMS.**

(a) **Administrative Claims Bar Date.** Any and all Administrative Claims shall be Filed by no later than thirty (30) days after the Effective Date (the "**Administrative Claims**

**Bar Date**"). Any requests for allowance and payment of Administrative Claims shall be served upon the Reorganized Debtor, the Debtor's counsel, the U.S. Trustee, and all other parties required under the Bankruptcy Rules or Local Rules by no later than Administrative Claims Bar Date and shall, at a minimum, set forth the name of the holder, amount, and basis for the alleged Administrative Claim. Any and all Administrative Claims shall be forever barred, disallowed, and discharged pursuant to the Plan unless (i) requests for such Administrative Claims are Filed and served prior to the Administrative Claims Bar Date and (ii) such Administrative Claims are thereafter Allowed pursuant to a Final Order of this Court. All objections to Other Administrative Claims shall be filed within thirty (30) days after the Filing of the request for such Other Administrative Claim, unless extended by the applicable administrative claimant and objecting party or the Court. For the avoidance of doubt, the deadline to file Administrative Claims for the NRH Debtor was set by its separate NRH Plan and nothing in this Order extends the applicable deadline for Administrative Claims for the NRH Debtor, provided that any previously approved fees or fees separately approved don't have to be resubmitted or re-approved.

(b)     **Payment.** Except to the extent that a holder of an Allowed Administrative Claim consents to different treatment, each holder of an Allowed Administrative Claim shall receive, on account of and in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to the Allowed amount of such Administrative Claim in accordance with the Plan.

18.     **PROFESSIONAL FEE CLAIMS.** Each Professional holding a Professional Fee Claim that has not previously been Allowed shall File a final fee application for allowance and payment of such Professional Fee Claim (a "**Fee Application**") no later than forty-five (45) days after the Effective Date, any Fee Application not timely filed will be disallowed without further order of the Court. All Fee Applications shall conform to and comply with all applicable rules and

regulations contained in the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Any objections to a Fee Application shall be Filed within fourteen (14) days after the Filing of such Fee Application unless extended by the applicable Professional and objecting party or the Court. Allowed Professional Fee Claims shall be paid in accordance with and pursuant to Section 5.03 of the Plan. For the avoidance of doubt, the deadline to file Professional Fee Claims for the NRH Debtor was set by its separate NRH Plan and nothing in this Order extends the applicable for Professional Fees for the NRH Debtor, provided that any previously approved fees or fees separately approved after entry of this Order don't have to be resubmitted or re-approved.

19.     **EXECUTORY CONTRACTS AND UNEXPIRED LEASES.** Pursuant to Article VIII of the Plan, the Debtor is hereby deemed to have assumed, as of the Effective Date, each Executory Contract or Unexpired Lease that is not rejected or that was not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court. Pursuant to the Plan Supplement any assumed Executory Contract or Unexpired Lease not listed in the Plan Supplement in an alternate amount shall have a Cure Claim of $0. This Order shall constitute approval, pursuant to Bankruptcy Code §§ 365(a) and 1123(b) of (i) the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases as provided in the Plan and Plan Supplement and (ii) the rejection of Executory Contracts and Unexpired Leases pursuant to Article VIII of the Plan. Such assumption or rejection shall be legal, valid, and binding upon the applicable Reorganized Debtor and all counterparties to such Executory Contracts or Unexpired Leases, and satisfies all requirements of Bankruptcy Code § 365. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control",

"assignment", or similar provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan, shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default, breach, violation or acceleration rights with respect thereto. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. The portions of any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court, and any remaining portions of such Proofs of Claim shall remain unaffected unless otherwise specifically objected to. Notwithstanding anything to the contrary in the Plan, the Debtor or the Reorganized Debtor, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Rejected Executory Contracts and Unexpired Leases Schedule at any time up to forty-five (45) days after the Effective Date or as later stated in the Plan.

20. **REJECTION CLAIMS.** Any and all Rejection Claims, unless an earlier deadline was previously set by the Court, shall be Filed by no later than thirty (30) days after the Effective Date (the "**Rejection Claims Bar Date**") and shall be served upon the Reorganized Debtor, the Debtor's counsel, by no later than Rejection Claims Bar Date and shall, at a minimum, set forth the name of the holder, amount, and basis for the alleged Rejection Claim. Unless a Proof of Claim is timely Filed on or before Rejection Claims Bar Date, all Rejection Claims for which a Proof of Claim is

not timely Filed on or before Rejection Claims Bar Date are forever barred, disallowed, and discharged pursuant to this Order and shall not be enforceable against, as applicable, the Debtor, the Reorganized Debtor, the Estate, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary. Any objections to a timely-Filed Rejection Claim shall be filed by the Claims Objection Deadline. If an objection to a Rejection Claim is timely Filed, such Rejection Claim shall only become an Allowed Claim upon Final Order of the Bankruptcy Court. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with of the Plan, as applicable.

21. **DISTRIBUTIONS.** All Distributions shall be made in accordance with Plan, except that the Year 1 Distribution on account of Allowed General Unsecured Claims shall be made on or before December 30, 2022. The Debtor or the Reorganized Debtor, as applicable, are hereby authorized to make any and all Distributions contemplated under the Plan. No Distributions shall be made on account of any Claim that is not Allowed in accordance with the terms of the Plan and/or this Order.

22. **DISTRIBUTION RECORD DATE.** The Distribution Record Date shall be the Effective Date. Neither the Debtor nor the Reorganized Debtor shall have any obligation to recognize any transfer of Claims or Interests after the Distribution Record Date and shall instead be entitled to rely upon the Claims Registers as of the Effective Date for all purposes related to Distributions under the Plan for General Unsecured Claims.

23. **GENERAL AUTHORIZATION.** Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects without any further action by any person or entity or any further Order of this Court.

24. **GOVERNMENTAL APPROVALS NOT REQUIRED.** Except as otherwise provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto.

25. **FILING AND RECORDING.** This Order: (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged, and terminated, except as otherwise provided in the Plan; and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

26. **EXEMPTION FROM TRANSFER TAXES.** Pursuant to Bankruptcy Code § 1146(a), the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan,

the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All transactions consummated by the Debtor and approved by the Court on and after the Petition Dates through and including the Effective Date, including the transfers effectuated under the Plan, and the assumption, assignment, and sale by the Debtor of Executory Contracts and Unexpired Leases pursuant to Bankruptcy Code § 365(a), shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

27. **EXCULPATION, RELEASES, AND INJUNCTION.** As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Exculpation, Releases, and Injunction embodied in the Plan, including those contained in Sections 12.05 (Releases by the Debtor), 12.06 (Releases by Releasing Parties), 12.04 (Exculpation), and 12.02, 12.03, and 12.07 (Injunctions), of the Plan are hereby approved as set forth in the Plan. The Court finds that all releases, exculpations, injunctions, and provisions in the Plan contained in the Plan were not objected and only Hartman Richardson Heights Properties, LLC and Paramount Pictures Corporation opted out of the releases in Section 12.06 and thus, all releases, injunctions and exculpation are consensual and deemed consensual and are thus allowed and are not in contravention of applicable law and precedent.

28. **SETTLEMENT OF CLAIMS AND INTERESTS.** Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, Releases, and

other benefits provided under the Plan, on the Effective Date, the provisions of the Plan (including, without limitation, the Releases, Exculpation, and Injunction) shall constitute a good-faith compromise and settlement of all controversies, Claims, and Interests resolved pursuant to the Plan. The global Settlement of Claims and Interests set forth in the Plan and all other Settlements under the Plan and this Order, are hereby approved pursuant to Bankruptcy Code § 1123(b) and Bankruptcy Rule 9019. The parties are authorized and directed to take such other actions as may be necessary to effectuate the same, and perform all obligations contemplated thereby.

29.    **NOTICE OF DEFAULT UNDER PLAN.** No default or breach in the performance of this Plan shall automatically result in the termination of the Plan or constitute a revocation of this Order.  If any party in interest believes that the Debtor/Reorganized Debtor is in default of any requirement of this Plan, such party shall provide written notice of such claimed default to the Debtor/Reorganized Debtor and Counsel to the Debtor prior to filing a motion or with the Bankruptcy Court regarding the alleged noncompliance or otherwise seeking Bankruptcy Court or other enforcement of the terms of this Plan.

30.    **AGREED TO PLAN PROVISIONS.**  Pursuant to negotiations with certain parties in interest before the Confirmation Hearing, the Debtor has agreed to the following provisions in Order, in lieu of certain parties filing objection.

a.    As to creditor BTH only: "For the avoidance of doubt, the carveout contained in the Plan for the "Prepetition Secured BTH Debt" in Sections 12.06 and 12.11 of the Plan in Article XIII shall also include the BTH Loan Documents."

b.    As to Alamo Drafthouse Cinemas, LLC, ("**Alamo**") only: "Notwithstanding anything in this Plan, the Confirmation Order, the Plan Supplement or otherwise, Alamo shall not be required to file a request for payment of an Administrative Claim for amounts

due under the assumed Franchise Agreement between the Debtor and Alamo, and any amounts due to Alamo under the Franchise Agreement shall be paid by the Debtor in the ordinary course, provided, however, that any amounts owed by the Debtor on account of that certain Promissory Note in the original principal amount of $744,256.89 dated January 31, 2020 payable to Alamo Drafthouse Cinemas, LLC (the "**Alamo Note**") shall be paid in accordance with the schedule for payment stated in the Alamo Note. The Franchise Agreement, with any amendments, modifications, exhibits or attachments and Alamo Note between the Debtor and ADC will be expressly assumed as of the Effective Date. Alamo and the Debtor agree that there is no Cure Claim for the Franchise Agreement as of the Petition Date, and that (i) any amounts due to ADC under the Franchise Agreement arising after the Petition Date shall be paid by the Debtor in the ordinary course, and (ii) any amounts owed by the Debtor on account of the Alamo Note shall be allowed and paid in accordance with the schedule for payment stated in the Alamo Note. Notwithstanding anything herein, and for avoidance of doubt, the assumption of the Franchise Agreement and Alamo Note shall not release or satisfy any Administrative Claim for amounts due under the Franchise Agreement or the Alamo Note, all of which must be paid as set forth elsewhere in this Plan. For the avoidance of doubt, nothing in this Plan, the Confirmation Order, the Plan Supplement or otherwise will release any party, including the Debtor, from its unpaid obligations arising after the Petition Date under the Franchise Agreement and the Alamo Note. For the avoidance of doubt, nothing in this Plan, the Confirmation Order, the Plan Supplement or otherwise will release any non-debtor party from any other franchise agreement by or between Alamo and the group of entities referenced by the Debtor in section 2.01 of the Plan, above, or any obligors on the Alamo Note.

c.     As to Creditor the Texas Comptroller of Public Accounts' only: "Notwithstanding any term in the Plan or this Confirmation Order to the contrary: (i) the Texas Comptroller of Public Accounts' (the "**Comptroller**") setoff rights are preserved subject to the requirements of § 553 of the Bankruptcy Code and applicable law; (ii) pursuant to § 503(b)(1)(D) of the Bankruptcy Code, the Comptroller shall not be required to file a request for payment of any § 503(b)(1)(B) and (C) administrative expense; (iii) taxes coming due post-petition, if any, shall be reported and paid to the Comptroller when due under state law; (iv) if the Comptroller disputes the amount of a paid administrative expense, the Comptroller shall notify the Plan Administrator and counsel within 15 days of receipt of payment; (v) if the Comptroller does not make such notification, the Comptroller will have been deemed to agree to the amount paid, so that the Plan Administrator can proceed with distributions; (vi) any and all tax liabilities owed by Debtor to the Comptroller, including those resulting from audits, shall be determined under and in accordance with the laws of the State of Texas; (vii) Debtor shall file the requisite return for the pre-petition 2022 franchise tax period on or before August 15, 2022; (viii) upon filing, Debtor shall forward a copy of the return to counsel for the Comptroller; (ix) the Comptroller shall be allowed to amend its pre-petition claim, without leave of court, within 15 days of receipt of the return; (x) the Comptroller's pre-petition claim shall be paid pursuant to section 5.04 of the Plan; and (xi) other than Debtor's payment of the claim pursuant to the Plan, the bankruptcy shall have no effect on the Comptroller's rights as to non-Debtor third parties."

d.     As to creditor Dallas County, Texas only: "Dallas County will receive payment of its allowed claim for year 2022 ad valorem property taxes in the ordinary course

of business prior to or on January 31, 2023. Notwithstanding any other provision in the Plan or this Confirmation Order, Dallas County will retain the liens that secure all allowed amounts ultimately owed until it receives payment in full of its allowed claim. In the event the Debtor does not pay Dallas County's claim prior to or on January 31, 2023, Dallas County will receive interest on its allowed claim from the petition date through the effective date and from the effective date through the date of payment in full of its allowed claim pursuant to 11 U.S.C. Sections 506(b), 511 and 1129."

e.    As to creditors, 20th Century Fox/Fox Searchlight (d/b/a Searchlight Pictures) and Walt Disney Studios Motion Pictures only: "Notwithstanding anything to the contrary contained in this Order or the Plan, the (1) Master Theatrical Exhibition Contract (or Studio Contract/License Agreement) with 20th Century Fox/Fox Searchlight (d/b/a Searchlight Pictures) and (2) Master Service Agreement (or Studio Contract/License Agreement) with Walt Disney Studios Motion Pictures, each of which is listed on Exhibit B to the Plan Supplement (collectively, the "**Disney Contracts**"), (a) shall vest in the Reorganized Debtor and remain in full force and effect with all parties' rights preserved, provided that no amounts are owed by the Debtor as of the Petition Date on the Disney Contracts and (b) shall not be treated, and shall not in any manner deemed to be treated, as Executory Contracts."

31.    **DISCHARGE OF THE SUBCHAPTER V TRUSTEE.** Pursuant to Bankruptcy Code section 1183 and 1194(b), the Subchapter V Trustee shall terminate any and all services with respect to the Debtor and the Subchapter V Case once the Plan has been substantially consummated.

32. **SETOFF.** Sections 12.08 (Setoff) and Section 12.09 (Recoupment) of the Plan are proper and approved, and such Sections shall govern for purposes of determining rights of recoupment, setoff, and setoff mutuality under applicable law. The rights of the Debtor or Reorganized Debtor to dispute any alleged right of recoupment or setoff is preserved in all respects.

33. **RETENTION OF JURISDICTION.** Pursuant to Bankruptcy Code §§ 105(a) and 1142, notwithstanding confirmation of the Plan or occurrence of the Effective Date, this Court retains exclusive jurisdiction over this Subchapter V Case and related matters, as legally permissible, to the full extent provided in the Plan. To the extent it is not legally permissible for the Court to have exclusive jurisdiction over any of the foregoing matters, the Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally permissible.

34. **REVERSAL.** Except as otherwise provided herein, if any provision of this Order is hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtor or Reorganized Debtor prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto, and shall remain binding.

35. **CONFLICTS.** The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency among the Plan and any Plan Document, the provisions of the Plan shall govern. In the event of any inconsistency between the Plan and this Order, this Order shall

govern. The provisions of this Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of the Court. Unless expressly provided for herein, nothing in the Plan or this Order shall affect any orders entered in the Subchapter V Cases pursuant to section 365 of the Bankruptcy Code or Bankruptcy Rule 9019.

36. **INJUNCTION AND AUTOMATIC STAY.** Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Subchapter V Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on this Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect through and including the Effective Date. All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

37. **NOTICE.** Within four (4) business days of the entry of this Order, Debtor shall transmit a copy of this Order via first class mail with postage prepaid to all of its known creditors and parties-in-interest. Such notice shall be adequate under the circumstances and shall be sufficient to meet the requirements necessary for due process and Bankruptcy Rule 2002(f)(7).

38.     **FINAL ORDER.** This Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

### END OF ORDER ###

**FINDING OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SUBCHAPTER V PLAN OF REORGANIZATION FOR DEBTOR ICED TEA WITH LEMON, LLC**          **47**

84121267.3